IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIE GOODING,                    :        CIVIL ACTION NO. **1:CV-07-1243**
                                   :
          Petitioner               :        (Chief Judge Kane)
                                   :
          v.                       :        (Magistrate Judge Blewitt)
                                   :
JAMES WYNDER, et al.,              :
                                   :
          Respondents              :

## REPORT AND RECOMMENDATION

### I. Background.

On July 10, 2007, Petitioner, Willie Gooding, an inmate at the State Correctional Institution at Dallas, Pennsylvania, filed through counsel, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner also simultaneously filed a 41-page Memorandum of Law (Doc. 2), and he later filed, on his own, an Amended Memorandum of Law on August 1, 2007. (Doc. 9).[1] Petitioner challenges his October 2001 conviction in the York County Court of Common Pleas ("CCP") for third degree murder and kidnaping. Petitioner raises as Ground One "violation of the 6th and 14th Amendments regarding the introduction of highly prejudicial 'other crimes' evidence." (Doc. 1, p. 6). Petitioner states that he raises a due process claim as well as a claim that his right to counsel was violated. Specifically, Petitioner states that "Trial court allowed prosecution

---

[1]Petitioner filed an "Amended Memorandum of Law" (Doc. 9) on his own, which did not add argument to the original Memorandum. (Doc. 2). Rather, the Amended Memorandum attempts to add an additional claim not contained in the Habeas Petition. (Doc. 1).

to smear me as a drug dealer in a case that did not involve drugs.  Prosecutor exploited judge's ruling to depict me as a bad man generally who was ruining the local community.  Direct appeal counsel failed to adequately preserve this claim.  Trial counsel also failed to issue cautionary instructions." (Doc. 1, p. 6).  As Ground Two raised in his Habeas Petition, Petitioner states that "trial counsel was ineffective for failing to object to the unwarranted removal of a juror." (*Id*., p. 7).  Petitioner contends that the "Trial judge removed the only minority race juror right  before deliberations for writing herself a note in the jury room, creating an all-white jury to hear Petitioner's case." (*Id*).  Thus, Petitioner claims ineffective assistance of his direct appeal counsel for failing to preserve the claim that the trial court erred when it allowed the prosecution to show Petitioner as a drug dealer in a case that did not involve drugs, and that his trial counsel was ineffective for not objecting to the trial judge's dismissal of the only "minority race juror" prior to deliberation, resulting in "an all-white jury." (Doc. 1, pp. 6-7).  As relief, Petitioner seeks this Court to dismiss all charges, or to order a new trial or an evidentiary hearing. (Doc. 1, p. 15).

Petitioner essentially argues that the initial ineffectiveness relates to the appeals process, when his direct appeal counsel failed to properly cite to the trial record, resulting in a waiver of the claim that the trial court erred in allowing unrelated "other crimes" evidence against the Petitioner during his trial.  (Doc. 2, p. 11).  Further, Petitioner claims the prosecution exploited this evidence of "other crimes" to make the Petitioner look like a "bad man," *i.e.* that Petitioner came from New York City to sell drugs in the jurors' hometown of York, and that the trial court erred by admitting the "other crimes" evidence and by failing to give the jury a cautionary instruction by advising  the jury that they could  use the "other crime" evidence only in a very limited capacity, to the extent

that it was admissible. (*Id*.). The second ineffective counsel claim, according to Petitioner, stems from trial counsel's failure to object to the trial court's removal of the jury's only "minority race juror" for taking notes to herself during the trial, creating an "all-white jury." (Doc. 2, pp. 7, 38).

On August 6, 2007, Petitioner filed a Notice of Election form in which he elected to have the Court rule on his § 2254 Petition as filed. (Doc. 10).

Respondents were served with the Habeas Petition and, after being granted an extension of time, on September 10, 2007, they filed their Response Brief (Doc. 14) along with the transcripts from the Petitioner's trial in York County CCP and a December 1, 2006 Memorandum of the Pennsylvania Superior Court (affirming the trial court's denial of Petitioner's PCRA Petition). (Docs. 17-19). Petitioner filed his Traverse (Doc. 15) later that same day. Petitioner also filed an "Amended Traverse" on September 24, 2007, which was identical to the original Traverse, but contained one additional sentence. (Doc. 21). Thus, we will refer only to the subsequent Amended Traverse (Doc. 21).

Respondents do not argue that Petitioner's Habeas Petition was time-barred and they do not contend that Petitioner failed to exhaust his state court remedies with respect to his present two (2) habeas claims. (Doc. 14). The Habeas Petition is now ripe for disposition.[2]

---

[2]We agree with Petitioner (Doc. 2, pp. 7-8) and find Petitioner's Habeas Petition was timely filed under the one-year statute of limitation ("SOL") of the AEDPA since we calculate that about 11 months on the SOL ran before the Habeas Petition was filed, *i.e.* about 3 months and 3 weeks ran on the SOL after Petitioner's judgment of sentence became final on or about February 13, 2004, until he filed his June 10, 2004 PCRA Petition, and about 7 months and 1 week ran on the SOL after the denial of Petitioner's PCRA Petition was affirmed on December 1, 2006, until he filed his Habeas Petition on July 10, 2007.

## II. STATE PROCEDURAL HISTORY.

On September 10, 2001, the trial for the murder of Arthur Irick commenced in York County, Pennsylvania, in which the Petitioner was a co-defendant, and was represented by Roycee Morris, Esquire. (Doc. 2, p. 2). At the conclusion of the trial, on September 13, 2008, the Petitioner was found guilty of murder in the third degree and kidnaping, and he was acquitted of all other charges including first degree murder and conspiracy. (Doc. 2, p. 3 and Doc. 14, p. 3). On October 24, 2001, Petitioner was sentenced to the maximum 20-40 years imprisonment for third degree murder as well as the maximum 10-20 years imprisonment for kidnaping, resulting in a total sentence of 30-60 years imprisonment. (*Id.*). Petitioner's timely post-sentence motions were denied on November 19, 2001, and on February 25, 2003, the Superior Court affirmed the Petitioner's judgment of sentence. (*Id.*; *See also Commonwealth v. Gooding*, 835 A.2d 709 (Pa. Super. 2003)). The Pennsylvania Supreme Court denied the Petitioner's petition for allowance of appeal on November 13, 2003. (*Id*; *See also Commonwealth v. Gooding*, 835 A.2d 709 (Pa. 2003)). For all the direct appeals, Mr. Morris was the Petitioner's counsel. (*Id.*). Petitioner did not file a petition for writ of *certiorari* with the United States Supreme Court. Thus, as Petitioner recognizes (Doc. 2, p. 7), his judgment of sentence became final on or about February 13, 2004.

On June 10, 2004, Petitioner filed a *pro se* Petition under the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, *et seq.* Petitioner claimed that his trial counsel and appellate counsel were ineffective despite the fact that Petitioner was represented by the same counsel at his trial, sentencing and during his direct appeal. (Doc. 19, 12-1-06 Superior Court Memorandum, p. 2). Subsequently, counsel was appointed to represent Petitioner, and on June 25, 2004, David

McGlaughlin, Esq., filed a PCRA Petition on Petitioner's behalf.  On July 25, 2004, counsel  filed a supplemental PCRA Petition for Petitioner.

On August 9, 2004, the PCRA Court held an evidentiary hearing.  (Doc. 2, p. 4 and Doc. 14, p. 3).  Petitioner was represented by counsel during the hearing.  (*Id*.).  One of the bases for Petitioner's PCRA Petition  was that direct appeal counsel (*i.e.* Attorney Morris) was ineffective for failing to preserve the claim challenging the admission of "other crimes" evidence during Petitioner's trial.  (*Id*.).  Petitioner states that despite the testimony of Mr. Morris at the PCRA hearing that he did not "comply with the 'technical rule' requiring him to adequately cite to the record," his PCRA Petition was denied on February 28, 2005. (*Id*.).  Petitioner then appealed, *pro se*, the denial of his PCRA Petition to the Pennsylvania Superior Court, and as the Superior Court stated, he raised the following five issues for review:

> A.  Whether the Appellant [Petitioner] was denied due process under the United States Constitution and his right to a fair trial by trial court removal of a sitting juror and further prejudiced by trial counsel's failure to raise an objection or seek rehabilitation of the juror.
>
> B.  Whether the Appellant was denied due process of law under the United States Constitution based upon trial counsel's failure to object when the trial court gave an improper and erroneous instruction on accomplice liability when Appellant was only charged in the bill of information as a conspirator, not an accomplice.
>
> C.  Whether direct appeal counsel was ineffective for failing to properly preserve for appellant review the Appellant's challenge to the admission of uncharged crimes evidence in violation of Rule 404(b) which violated his due process of law under the United States Constitution.
>
> D.  Whether PCRA counsel was ineffective for omitting a meritorious issue (the infraction: trial counsel's ineffectiveness for not objecting to trial court error when giving instructions to the jury on the applicable penalties for first and third degree murder), from the original Post Conviction Relief Act (PCRA)

[petition] filed *pro se*.

E.  Whether [the] trial court abused its discretion by imposing a sentence far in excess to [sic] the Pennsylvania sentencing guidelines by enhancing Appellant's guideline range to twice what was called for in [] 204 Pa. Crimes Code in the aggravated range, thus violating Appellant's state and federal rights to due process. (Footnote omitted).

(Doc. 19, 12-1-06 Superior Court Memorandum, pp. 3-4).[3]

With respect to Petitioner's fifth issue, Claim E., the Superior Court noted that since this issue was "previously raised and disposed of on direct appeal," "this claim may not be considered under the PCRA." (Doc. 19, 12-1-06 Superior Court Memorandum, p. 4, n. 4). (citations omitted).

The denial of Petitioner's PCRA Petition was affirmed by the Superior Court on December 1, 2006.  (*Id.*, p. 16).  Petitioner did not pursue further review with respect to the denial of his PCRA Petition by filing a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. (Doc. 14, p. 3).  Petitioner then filed this instant Habeas Petition on July 10, 2007, under 28 U.S.C. § 2254.

---

[3]We note that issues A. and C. are the only claims currently before this Court  for habeas review.  As will be discussed below, this Court was not presented with Claim D., since this claim was not included as a grounds for relief  in the instant Habeas Petition filed through counsel. (Doc. 1).  Rather, Claim D., ineffective assistance of trial counsel for failure to object to the trial court's instruction to the jury on the penalties for first and third degree murder, is only  included in Petitioner's *pro se* Amended Memorandum of Law (Doc. 9) as an additional claim. Petitioner did not seek leave of Court to amend his Habeas Petition to present an additional claim.  Also, Petitioner is represented by counsel in this case, and Claim D. was not raised in the Habeas Petition filed by counsel, and it was not addressed in counsel's lengthy Memorandum in support of the Habeas Petition.  (Doc. 2, pp. 11 and 38).

## III.  STANDARD OF REVIEW.

The Antiterrorism and Effective Death Penalty Act, enacted on April 24, 1996, revised the standard of review for cases challenging state convictions pursuant to 28 U.S.C. § 2254. *Dickerson v. Vaughn*, 90 F.3d 87, 89 (3d Cir. 1996) *citing* Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, Title I, Sec. 104, 110 Stat. 1214 (1996) ("AEDPA").  *See also Knight v. Kelchner*, Civil No. 06-1942, M.D. Pa., 11-9-97 Memorandum (J. Conaboy), p. 14.  Section 2254(d), as amended, states as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

The "contrary to" provision contained in Section (d)(1) is evaluated as follows:

> [T]he inquiry must be whether the Supreme Court has established a rule that determines the outcome of the petition.  Accordingly, we adopt *O'Brien*'s holding that 'to obtain relief at this stage, a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.'  In other words, it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome.

*Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) referencing *O'Brien v.*

*Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998).

In *Breighner v. Chesney,* this Court stated the appropriate standard for the "unreasonable application" clause.  301 F. Supp. 2d 354, 357 (M.D. Pa. 2004), *aff'd.*, 156 Fed. Appx. 539 (3d Cir. 2005)(Non-Precedential).  In *Breighner* the District Court held that under § 2254, a federal court no longer must "accord the 'presumption of correctness' to factual findings of a state court when the state court has previously considered and rejected the Petitioner's claims for relief."  The *Breighner* Court held that the "presumption of correctness does not apply in such cases," *i.e.* when federal court reviews a habeas claim that the state court unseasonably applied federal law. *Breighner*, 301 F. Supp. 2d at 357.  The *Breighner* Court further held that 28 U.S.C. § 2254"subsections (d)(2) and (e)(1) simply cannot apply to the same case; they are mutually exclusive."  301 F. Supp. 2d at 365.  The Court interpreted subsection (e)(1) to be inapplicable to proceedings under subsection (d)(2), and that subsection (e)(1) does not apply to claims under subsection (d)(2).  *Id*. at 367-368.

The *Breighner* Court stated that:

> The federal habeas court's analysis under this subsection [(d)(2)] is limited to the record available to the state trial court--and reproduced in federal proceedings by the petitioner or "the State"--and encompasses two questions: (1) whether a factual determination of the state court was "unreasonable" in light of the state record, and (2) whether the state court's decision was "based" on that unreasonable determination. *See*  28 U.S.C. § 2254(d)(2), (f).

*Id*. at 368.

The *Breighner* Court also stated that "a factual determination should be adjudged 'unreasonable' under paragraph (2) only if the court finds that a rational jurist could not reach the

same finding on the basis of the evidence in the record."(citations omitted).  *Id.* at 368-369.  The Court also stated that '[m]ere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination."  (Citations omitted).  *Id.*

In *Early v. Packer*, 537 U.S. 2 (2002), the Supreme Court indicated that as long as the state court adjudicates a claim substantively rather than procedurally, even if the federal law is not identified as the rule of the decision, it has adjudicated the claim on the merits for purposes of the AEDPA.  As stated, we find that both of Petitioner's ineffective assistance of counsel habeas claims were exhausted and that the Pennsylvania Superior Court adjudicated them on the merits.   (Doc. 19, 12-1-06 Memorandum of Superior Court, pp. 5-15).  Thus, we review Petitioner's two habeas claims on the merits utilizing the above discussed AEDPA deferential standard of review.

As mentioned, the AEDPA affords significant deference to legal conclusions decided by the state court.  As the Court stated in *Tenuto v. Patrick*, 2007 WL 1057008, *2-*3 (E.D. Pa. 2007):

> An application for a writ of habeas corpus on behalf of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.
> 28 U.S.C. § 2254(d).

*See also Knight, supra*, p. 15.

## IV. DISCUSSION.

### A. Exhaustion

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (April 24, 1996), which modified the procedures for habeas corpus proceedings in federal court.   Section 104(1) of the Act mandates that applications by persons in state custody "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the Court of the State" or there is no available state remedy or that process would be ineffective.[4]   A habeas corpus petitioner bears the burden of demonstrating that he or she has satisfied the exhaustion requirement. *Gonce v. Redman*, 780 F.2d 333, 335-36 (3d Cir. 1985).  The exhaustion requirement "rests upon the principles of comity and judicial economy [and] provides state courts with an initial opportunity to consider and correct alleged violations of prisoners' rights without disruption from the federal courts." *Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir. 1991); *see also Gibson,* 805 F.2d 135, 138 (3d Cir. 1986).

Exhaustion is not complete unless the trial court, the "intermediate court," and the highest state court, here the Superior and Supreme Courts of Pennsylvania, have been presented with the substance of the Petitioner's federal claim. *Evans v. Court of Common Pleas, Del. County, Pa.*, 959 F.2d 1227, 1230 (3d Cir. 1992).  *See Duncan v. Henry*, 115 S.Ct. 887, 888 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

---

[4]We note that a federal court may deny an application on the merits notwithstanding an applicant's failure to exhaust state remedies.  *See* 28 U.S.C. §2254(b)(2).

Exhaustion of state remedies is not required if:  1) the state corrective process is "so deficient" that any effort to obtain relief via state proceedings would be futile, *Gibson*, 805 F.2d at 138;  2) the acts of the state authorities have, in effect, made state remedies unavailable to the Petitioner, *Mayberry v. Petsock*, 821 F.2d 179, 184 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987); and 3) there has been such an "inordinate delay" in state procedures that the state process has been rendered ineffective. *Hankins v. Fulcomer*, 941 F.2d 246, 251 (3d Cir. 1991); *Schandelmeier v. Cunningham*, 819 F.2d 52, 54-55 (3d Cir. 1986), *cert. denied*, 480 U.S. 938 (1987).

In the instant matter, as discussed above, we agree with Petitioner (Doc. 2, p. 8) and we find that both of Petitioner's instant habeas claims have been presented to the state's intermediate or highest appellate courts.  Thus, we find that the Petitioner has exhausted his present habeas claims. Also, as stated, Respondents do not contend that Petitioner failed to exhaust his present two habeas claims.  (Doc. 14).

### B.  Procedural Default

We also find that Petitioner's habeas claims are not procedurally defaulted.  A procedurally defaulted claim, while technically exhausted, may not be considered under § 2254 because the state procedural rule constitutes an independent and adequate ground to deny relief.  *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A claim is procedurally defaulted when state law clearly forecloses state court review of the claim. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

In Pennsylvania, a prisoner seeking to challenge a conviction must do so by direct appeal or by way of the PCRA.  *See generally* 42 Pa. C.S.A. § 9542.  Under the PCRA, a petitioner must

plead and prove that a claim has not been previously litigated or waived.  42 Pa. C.S.A.

§ 9543(a)(3).  See also *Tenuto v. Patrick*, 2007 WL 1057008, at *8, n.1 (E.D.Pa. April 6, 2007).

An issue is "waived" if "the petitioner could have raised it but failed to do so before trial, at

trial, during unitary review, on appeal or in a prior state post-conviction proceeding."  42 Pa. C.S.A.

§ 9544(b).

A federal court cannot review the Petitioner's procedurally defaulted claims "unless the

prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *McCabe

v. Pennsylvania*, 419 F.Supp.2d 692, 696 (E.D. Pa. 2006).

As mentioned, we do not find that either of Petitioner's two habeas claims are procedurally

defaulted because the Pennsylvania Superior Court, in its December 1, 2006 decision regarding

Petitioner's appeal of the denial of his PCRA Petition, considered both claims on their merits.  (Doc.

19,12-1-06 Memorandum of Pennsylvania Superior Court, pp. 5-15).

Therefore, we will discuss each claim below, and we will apply the AEDPA's deferential

standard of review to them.

C.  Habeas Claims

As mentioned, Petitioner raises the following two habeas grounds for relief:  Ineffective

assistance of trial counsel, in that counsel failed to adequately cite to the trial record on direct

appeal thereby waiving the claim that the trial court erred in allowing in unrelated "other crimes"

evidence that Petitioner came from New York City to sell drugs in the juror's hometown; and

-12-

Ineffective assistance of trial counsel in that trial counsel failed to object to the trial court's dismissal, immediately before deliberation, of the jury's only "minority race" member for taking notes in the jury room. (Doc. 1, pp. 6-7 and Doc. 2, pp. 11 and 38).  The Respondent DA contends  that the Petitioner's two claims of ineffective assistance of counsel must fail because they lack merit.  (Doc. 14, pp. 5-8).

Strickland v. Washington lays out a two-part test to determine whether trial counsel was ineffective.  466 U.S. 668, 687 (1984); Knight, supra, p. 52.  First, the Petitioner must show that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms.  Lanfranco v. Murray, 313 F.3d 112, 118 (2d Cir.2002).  In order to prove that trial counsel was deficient, the Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the sixth amendment." Strickland, 104 S.Ct. at 2064.  Furthermore, the court must be highly deferential in favor of trial counsel when evaluating counsel's performance.  Id.

The second prong of the Strickland test requires the "defendant to show that the deficient performance prejudiced the defense" so much so that the defendant was deprived of a fair trial. Id.  Furthermore, a person claiming ineffective counsel has the burden of proving that he or she was prejudiced by the deficient performance of counsel.  Roe v. Flores-Ortega, 528 U.S. 470, 476-477 (2000).  Prejudice can be demonstrated by a showing that attorney error actually had an adverse effect on the defendant's case.[5]  See also Tenuto v. Patrick, 2007 WL 1057008, at *3-*4; Knight,

---

[5]In Reinert v. Larkins, the Court stated that, "[i]n order to successfully to claim ineffective assistance of counsel, [the Petitioner] must establish both that his attorney's performance was objectively unreasonable and that, but for the deficient performance, there would have been a

*supra*, p. 52.

The Petitioner requests habeas relief based on ineffective assistance of his trial counsel, and such claims, as stated, are reviewed under *Strickland*.  In *Everett v. Beard*, 290 F.3d 500, 508-509 (3d Cir. 2002), the Third Circuit discussed this standard and stated as follows:

> Applying *Strickland*, this Court recently has held that in order to establish a claim of ineffective assistance counsel, the petitioner must establish both that his counsel's performance was deficient and that the deficient performance prejudiced his trial to the extent that it undermined confidence in the trial's outcome.  The standard by which we judge deficient performance is an objective standard of reasonableness, viewed to the extent possible from the attorney's perspective at the time, without "the distorting effects of hindsight."  *Duncan v. Morton*, 256 F.3d 189, 200 (3d Cir. 2001) (citing and quoting *Strickland*, 466 U.S. at 687-90, 104 S.Ct. 2052). To demonstrate prejudice, the habeas petitioner must show a "reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

> In addressing the reasonableness of an attorney's representation, reviewing courts must be deferential in their scrutiny and scrupulously avoid the distortions of hindsight by viewing performance from counsel's perspective at the time.  *Id.* at 689-90, 104 S.Ct. 2052.  Furthermore, claimants must identify specific errors by counsel, and the court must indulge a strong presumption that counsel's conduct was reasonable.  *Id.* at 690, 104 S.Ct. 2052.

---

reasonable probability of a different outcome."  379 F.3d 76, 94-95(3d Cir. 2004)(quoting *Strickland*, 466 U.S. 668 (1984).).

1.  *First Habeas Claim, "Other Crimes" Evidence*

Petitioner states his first habeas claim for relief as follows:

> Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel on direct appeal failed to properly cite to the trial record, resulting in a waiver of the claim that the trial court erred in allowing unrelated "other crimes" evidence that petitioner came from New York City to sell drugs in the jurors' hometown of York, Pennsylvania, evidence that the prosecutor improperly exploited to portray the Petitioner as a "bad man" generally who the jury should punish for attempting to ruin their otherwise safe community. Petitioner was also denied a fair trial and due process of law as a result of the trial court's error in admitting this evidence and/or failing to issue a cautionary instruction on the very limited use the jury could make of this evidence, assuming it was admissible.

(Doc. 2, p. 11).

The main argument of the Petitioner's first claim is that the appeal counsel (who was, in fact, the same counsel that Petitioner had at trial) failed to adequately cite to the record in his direct appeal where the "other crimes" evidence was used to allegedly prejudice the Petitioner. Underlying this claim is Petitioner 's contention that the "other crimes" evidence was inadmissible[6],

---

[6]The trial court granted the Commonwealth's Motion *in Limine* to admit the "other crimes" evidence regarding Petitioner's involvement in drug trafficking and denied Petitioner's trial counsel's pre-trial Motion to Exclude such evidence.  In his Memorandum, Petitioner contends that the trial court stated as follows:

> Accordingly, we will at this point deny the motion in limine to [exclude] evidence of the drug trafficking since we deem it to be an integral part of the case.  It does show the relationship between the Defendant and other people who he allegedly conspired with and committed some of these crimes with.  And based on those factors, we think that it would be relevant, and we are not satisfied that the probative value would out weigh the prejudicial effect so we will permit that testimony at this point.

(Doc. 2, pp. 19-20).

or at the very least, a cautionary instruction should have been given to the jury as to the extent this evidence could be considered.

The Pennsylvania Superior Court, in Petitioner's direct appeal, found that the claim regarding the "other crimes" evidence was waived at appeal, citing counsel's failure to cite to the record properly. Petitioner quotes the Superior Court's reasoning as follows:

> Unfortunately, appellant [Petitioner] does not show us in the record where this [other crimes] evidence was heard by the jury. If the jury never heard the disputed evidence, he could not have been prejudiced by its admission. Appellant might be correct, but we will not scour the record to make an argument for him. This assignment is waived. Pa.R.A.P. 2119(a); *Commonwealth v. Irby*, 700 A.2d 463, 464 (Pa. Super. 1997)("[A]rguments which are not sufficiently developed are waived.").

(Doc. 2, p. 24).

Petitioner argues that the state court (Pennsylvania Superior Court), on direct appeal, did not adjudicate his first claim regarding the "other crimes" evidence on the merits since it found that his appellate counsel waived this claim by failing to point to where in the record the jury heard this evidence. Thus, Petitioner contends that the deferential standards of the AEDPA do not apply to his first claim. (Id., pp. 23-24).

Respondent DA states, as noted above, that Petitioner's trial counsel did in fact file a pre-trial motion *in limine* to exclude evidence regarding Petitioner's drug dealing and claimed that such "other crimes" evidence was inadmissable under Pennsylvania Rule of Evidence 404(b). (Doc. 14, p. 5). Respondent also agrees that while Petitioner's trial counsel, who was also Petitioner's appellate counsel, raised the "other crimes" evidence issue on direct appeal, he failed to show in the record where the jury heard this evidence, and thus, the Pennsylvania Superior Court found

-16-

that this issue was waived on direct appeal. (*Id*., p. 6). Respondent then states that Petitioner raised this issue again in his PCRA Petition and that the Superior Court did in fact consider this claim on its mentis in its December 1, 2006 decision. (*Id*.). Based on the record, cited in part above, we find that the Superior Court did in fact consider Petitioner's ineffectiveness claim that his counsel was ineffective for not properly preserving in his direct appeal his claim that the trial court erred in admitting "other crimes" evidence. (Doc. 19, 12-1-06 decision of the Pennsylvania Superior Court, pp. 3 and 12).

Thus, while it is true that the Pennsylvania Superior Court failed to adjudicate on the merits the Petitioner's first habeas claim on direct appeal, as Petitioner contends and as the record shows, this appellate state court did consider this claim on its merits in deciding Petitioner's appeal of the denial of his PCRA Petition. (Doc. 2, p. 34). Therefore, this claim was adjudicated on the merits regardless of trial counsel's failure to cite to the record in Petitioner's direct appeal. We thus apply the AEDPA deferential standard of review cited above with respect to Petitioner's first habeas claim. We find that the state court's decision was not contrary to clearly established federal law, nor was the decision based on an unreasonable determination of the facts. Thus, we will recommend that Petitioner's first claim for habeas relief be denied.

As stated in the footnote above, the trial court originally denied the Petitioner's Motion *in Limine* to preclude the stated "other crimes" evidence. The trial court judge based his decision to allow this evidence regarding drug trafficking on his finding that it was "an integral part of the case." The trial court judge found that this evidence was relevant and that its probative value outweighed its prejudicial effect since it "show[ed] the relationship between the [Petitioner] and other people

who he allegedly conspired with and committed some of these crimes with." (Doc. 2, p. 20).

In adjudicating the "other crimes" evidence claim, despite Petitioner's trial counsel's failure to cite to the record in his direct appeal to show that the "other crimes" evidence was inadmissible, the Superior Court, in its December 1, 2006 decision regarding Petitioner's appeal of the denial of his PCRA Petition, based its decision entirely on the holding of the same Rule 404(b) issue raised in the direct appeal filed by Mr. Thomas Malloy, the other Defendant charged in the murder of Arthur Irick along with Petitioner (though tried separately). (Doc. 2, p. 35). The Superior Court, in its decision denying Mr. Malloy's direct appeal, stated:

> A review of the trial testimony reveals only one reference that [Malloy] was involved in drug-related activity . . . . The other references to drug-related activity involved either [Malloy's] co-conspirators or the victim. ...
>
> Neither the single reference to [Malloy's] drug activity, **nor evidence of the drug activity of others**, was introduced to prove criminal propensity. Instead the evidence was admitted in order to demonstrate the motive for the murder of Arthur Irick. [Malloy] argues that this murder was not drug-related, but rather, that he killed the victim because he believed that the victim had attempted to rob and shoot him earlier in the evening, While there was evidence of the retaliation motive [Malloy] cites, this was not the entire story. The Commonwealth's evidence demonstrated that the victim and his associates were "stick-up kids" who systematically robbed known drug dealers; that [Malloy] and his co-conspirators knew this fact; that [Malloy] and his co-conspirators were drug dealers; and the [Malloy] murdered the victim in retaliation. Thus, evidence of the drug-related activity, which was limited [in Malloy's trial] as to [Malloy's] specific prior bad acts, was properly admitted to show that this killing did not occur in a vacuum, i.e., to demonstrate motive. *See, e.g., Commonwealth v. Hall*, 523 Pa. 75, 565 A.2d 144, 149 (1989) (evidence of past drug dealings admissible to demonstrate motive for murder). Moreover, given the limited nature of the references [in Malloy's trial], we conclude that the trial court did not abuse its discretion in determining that the probative value of the evidence outweighed any prospect of prejudice.

(Doc. 2, p. 35). *See Commonwealth v. Malloy*, 579 Pa. 425, 856 A. 2d 767, 775-76 (Pa.

-18-

2004)(Emphasis added).

In its December 1, 2006 decision, the Pennsylvania Superior Court stated that "[w]hen the same Rule 404(b) challenge was raised by [Petitioner's] accomplice, Charles Malloy, in his [Malloy's] PCRA Petition, our Supreme Court adjudicated the issue thusly:

> Neither the single reference to appellant's drug activity, nor evidence of the drug activity of others, was introduced to prove criminal propensity. [FN12] Instead, the evidence was admitted in order to demonstrate the motive for the murder of Arthur Irick. Appellant argues that this murder was not drug-related, but rather, that he killed the victim because he believed that the victim had attempted to rob and shoot him earlier in the evening. While there was evidence of the retaliation motive appellant cites, this was not the entire story. The Commonwealth's evidence demonstrated that the victim and his associates were "stick-up kids" who systematically robbed known drug dealers; that appellant and his co-conspirators knew this fact; that appellant and his co-conspirators were drug dealers; that the victim attempted to rob appellant earlier in the evening precisely because appellant and his co-conspirators were drug dealers; and that appellant murdered the victim in retaliation. Thus, the evidence of the drug-related activity, which was limited as to appellant's specific prior bad acts, was properly admitted to show that this killing did not occur in a vacuum, *i.e.,* to demonstrate motive. *Commonwealth v. Hall*, 523 Pa. 75, 565 A.2d 44, 149 (19889) (evidence of past drug dealings admissible to demonstrate motive for murder). Moreover, given the limited nature of the references, and the fact that the evidence was not exploited for improper purpose, we conclude that the trial court did not abuse its discretion in determining that the probative value of the evidence outweighed any prospect of prejudice.

> FN 12 In the case *sub judice*, as in Malloy's case, there was only one reference in the testimony to Appellant's [Petitioner's] involvement with the drug trade. (N.T. Trial, 9/12/01, at 428, 503).

*Commonwealth v. Malloy*, 579 Pa. 425, 439-40, 856 A. 2d 767, 776 (2004). (Doc. 19, 12-1-06 Memorandum of Superior Court, pp. 13-14).

The Superior Court then stated in its December 1, 2006 decision issued in Petitioner's case as follows:

> Considering that the facts, actors, and issues in Malloy's case are identical to those in the case *sub judice*, we adopt in its entirety the Supreme Court's determination that the evidence was properly admitted in Appellant's trial. Therefore, because we conclude that Appellant's underlying Rule 404(b) issue is without merit, appellate counsel cannot be deemed ineffective for having failed to preserve the issue for appeal.

(*Id.*, p. 14) (footnote omitted).

Based on the record, this Court finds that the first habeas claim of Petitioner was indeed adjudicated on the merits by the state court. Thus, this Court will consider Petitioner's first claim under the AEDPA's deferential standard of review and will treat the December 1, 2006 decision of the Superior Court with respect to this claim as an "adjudication on the merits" for purposes of § 2254(d). *See Lambert v. Beard*, 2007 WL 2173390, * 8 (E. D. Pa.)(claims that PCRA Court adjudicated on their merits was considered by federal court "under AEDPA's deferential standard of review.") citing, *Wright v. Vaughn*, 473 F. 3d 85 (3d Cir. 2006); *Fahy v. Horn*, 2003 WL 22017231 (E. D. Pa.). We will not review the stated Rule 404(b) claim *de novo* (*i.e.* pre-AEDPA standard of review) since Petitioner fairly presented it to the Pennsylvania Superior Court and the state court considered this claim on its merits. (Doc. 19, 12-1-06 Memorandum of Superior Court, pp. 13-14). The Superior Court found no merit to Petitioner's Rule 404(b) claim, and thus found that Petitioner's appellate counsel was not ineffective for not preserving this claim for direct appeal by not citing to the trial record to support the claim. (*Id.*).

We find that the state court's December 1, 2006 ruling regarding Petitioner's first habeas claim, *i.e.* evidence of Petitioner's drug related activity presented at his trial was properly admitted to show motive, was not contrary to clearly established federal law, and its decision was not opposite to any decision reached by the United States Supreme Court.  Nor was the decision "based on an unreasonable  determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d)(2).

The applicable Rule with respect to Petitioner's first habeas claim is Pennsylvania Rule of Evidence 404(b)(2), which provides, "Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Pa.R.E. 404(b)(2).  The Court in *Khalif v. Hendricks*, 2005 WL 2397227 (D.N.J.), stated as follows:

> Generally, matters of state procedural law are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  This is generally true even where the state court incorrectly applied state law.  *Id*. at 71. Rather, a federal habeas claim will lie only where a state court determination violated some federally protected right.  *Id*. at 68.  The Third Circuit likewise stated:
>
>> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights.  We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.
>
> *Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir.1991), *cert. denied*, 505 U.S. 1223 (1992); *see also Smith v. Zimmerman*, 768 F.2d 69, 73 (3d Cir.1985) ("a 'mere error of state law' is not a denial of due process").

-21-

Based on the above it is clear the Petitioner was not denied his due process rights or other federal right.  As the Superior Court found, the trial court correctly decided that evidence of Petitioner's drug-related activity, *i.e.* evidence of "other crimes" could be used to show motive, intent, etc., based on Pennsylvania Rule of Evidence 404 (b)(2).  Even if the state court's application of its own state rule was incorrect, this Court is limited to review the decision for deprivations of Petitioner's federal Constitutional rights.

Since Petitioner's first habeas claim was adjudicated on the merits by the Superior Court, despite the failure of appellate counsel to properly cite to the trial court record with respect to this claim in Petitioner's direct appeal, and since this adjudication was not contrary to federal law or based on an unreasonable determination of the facts, Petitioner's ineffective counsel claim must fail.  Further, since this Rule 404(b) claim was adjudicated on the merits by the Superior Court and it found that it was without merit, as the Superior Court stated, Petitioner's "appellate counsel cannot be deemed ineffective for having failed to preserve the issue for [direct] appeal." (Doc. 19, 12-1-06 Memorandum of Superior Court, p. 14).[7]  "In order to establish a claim of ineffectiveness, Petitioner must show that counsel's performance was deficient, and the deficient performance prejudiced his defense." *Lambert, supra* at *8 citing *Strickland, supra*.  As stated above, to demonstrate prejudice, the habeas petitioner must show a "reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

---

[7]The Third Circuit has also held  that "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d. Cir. 1999); *citing Newsted v. Gibson*, 158 F.3d 1085, 1090 (10 the Cir.1998) (§ 2254 claim); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir.1994); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989) (citation omitted).

466 U.S. at 694, 104 S.Ct. 2052; *Lambert, supra* at *8.   In our  case, even if Petitioner's appellate counsel made an unprofessional error by not citing to the trial court record in Petitioner's direct appeal with respect to the Rule 404(b) claim, the result of the trial would not have been different since the claim was raised in Petitioner's PCRA Petition, was adjudicated and was found to be without merit because the "other crimes" evidence was admissible to show motive.   For these reasons, we will recommend that Petitioner's request for habeas relief with respect to his first claim be denied.

     *2.  Habeas Claim Two, Juror Dismissal*

     Ground Two raised in Petitioner's Habeas Petition is that "trial counsel was ineffective for failing to object to the unwarranted removal of [the only minority race] juror."  (Doc. 1, p. 7). In his Memorandum, the Petitioner states his second claim for habeas relief as follows,"Trial counsel rendered ineffective assistance in violation of the Sixth Amendment to the United States Constitution when he failed to object to the trial court's rash and unsupported decision to remove the only juror of a minority race immediately before the jury retired to deliberate."  (Doc. 2, p. 38). Petitioner states that he is African American and that the "only minority juror on the panel" was Latina.  (Doc. 2, p. 38).

     It is clear from Petitioner's Memorandum (Doc. 2), as well as from the transcript of Petitioner's trial dated September 13, 2001 (Doc. 19, NT 606) and  the Superior Court's December 1, 2006 decision (Doc. 19, pp. 6-7) that, notwithstanding the trial court's direction to the jury prior to testimony not to take notes, a female juror in Petitioner's trial took notes in the jury room after

the last witness testified, and that she did not show the notes to any other juror.  (*Id*.).[8]

In its December 1, 2006 decision, the Pennsylvania Superior Court considered this claim of Petitioner, which was his first claim in his collateral appeal regarding the denial of his PCRA Petition. (Doc. 19, 12-1-06 Memorandum of Superior Court, p. 5).  The Superior Court discussed the relevant facts upon which Petitioner's claim was based, and stated as follows:

> "During the empanelling of the jury, in response to a question by a potential juror as to whether they would be allowed to take notes during the proceedings, the court informed the pool of jurors thusly:
>
> [The Court: What the law says,]  our Supreme Court has said jurors in criminal cases are not permitted to take notes.  You have to rely on your collective recollection.  It's a rule by our Supreme Court.
>
> [When In instruct you on the law, what our Supreme Court has also said, In have to read to you the instructions and after I'm done reading you the instructions, I'm not allowed to photo copy them.]  You have to go on what you hear in the courtroom so, no[,] you can't take notes.  You'll have to rely on your collective recollection.
>
> The nice benefit of a jury, you have 12 people that will sit so if one person misses something, maybe one or the other 11 can pick it up. It's your collective recollection you have to go by.

(Doc. 17, NT  122, lines 4-15, and Doc. 19, 12-1-06 Memorandum of Superior Court, pp. 5-6).

---

[8]We do not agree with Petitioner that the trial court's instruction was only "that no notes be taken in the courtroom" and his attempt to distinguish the removed juror's conduct since she took notes in the jury room as opposed to the courtroom.  (Doc. 2, p. 41).  Rather, as the record discussed below shows, the trial court clearly instructed  that "jurors in criminal cases are not permitted to take notes."  The trial court did not distinguish as to where the jurors could not take notes. (Doc. 19, 12-1-06 Superior Court decision, p. 6).  Thus, we find that the record shows that the removed juror violated the clear instruction of the trial court and that her conduct violated then Pa. R. Crim. P. 644.

A jury of twelve with two alternatives was then empanelled in Petitioner's CCP case.

The Superior Court then stated:

> At some point during closing statements, the court was informed by courtroom staff that a juror had been taking notes in the jury room. When closing statements concluded, the judge told counsel about the notes during a sidebar conference, saying "In think we should probably dismiss that particular juror from the panel." (N.T. Trial, 9/13/01, at 606). Both attorneys agreed with the court's suggestion that an alternate be substituted, with Appellant's counsel stating "If that's the course that you would like to take, no problem [sic] with that." (*Id.* at 607). The court thereupon dismissed the jury from the courtroom, except for the juror who had taken the notes. In response to questions from the judge, the juror responded that she had taken the notes after the last witness testified, that she had not shown the notes to any other juror, and that she had folded the paper and left it on the jury room table when they were called back into the courtroom for closing arguments. (*Id.* at 608). The judge then dismissed her from the jury, stating:

>> As I said, I'm sure that you did it with the best of intentions[,] but my concern is that essentially what happened is that your own recollection has been reduced to writing and it could very well influence some of the other jurors and based on that, we'll dismiss you as a juror from the case. . . . In am sorry that you won't participate in the decision but we're going - - it's a technical violation.

>> The appellate courts have said that notes should not be taken in the courtroom. I'll extend that to the jury room. We do greatly appreciate your service   . . .

> (*Id.* at 608-09).

When the remaining members of the jury returned to the courtroom, the judge instructed them as follows:

>> As we had mentioned[,] our Supreme Court has indicated that notes are not permitted to be taken and In don't know if there's ever been a situation, at least I'm not aware of any case law that governs what happens if somebody writes down things that occur back at the jury room.

-25-

> Clearly, once you've heard my instructions on the law and
> you get back there, you're permitted then to take notes and
> to do whatever you want[,] but prior to that occurring, you're
> not supposed to take notes for the case. . . . [W]e have
> dismissed [the 12th juror] from the panel as a result of that.

> (*Id*. at 611).

(Doc. 19, 12-1-06 Memorandum of Superior Court, pp. 6-7).

The Superior Court found no merit to Petitioner's claim that the removal of the juror was

erroneous and that his trial counsel was ineffective for not objecting to it.   The Superior Court

stated as follows:

> At the time of Appellant's trial, jurors were not permitted
> to take notes during the course of a trial pursuant to then
> Pa.R.Crim.P. 644.  "The reasoning behind the prohibition is
> that by taking notes, a juror emphasizes to himself and perhaps
> later to other jurors one feature of the case over other equally
> important features and thus a resulting distorted view may be
> gained of the whole picture which is before the jury for deliberation."
> *Thornton v. Weaber*, 380 Pa. 590, 596, 112 A.2d 344, 347-48
> (1955). [FN6]

> In support of his claim of error, Appellant cites case law in
> which juror note-taking was determined not to have been prejudicial
> to the defendant. [FN7].  However, in each of the cited cases, the
> issue of note-taking was brought to the attention of the court *after* the
> jury had returned its verdict, a factor crucial to the ultimate determination
> that the note-taking had not been fatally prejudicial.  By contrast, in
> Appellant's case, the judge was informed of the note-taking before
> he had even instructed the jury on the law, and well before deliberations
> had occurred or a verdict was returned.  The trial court thus had the
> opportunity promptly and effectively to address the juror's direct
> violation of the judge's prior instruction.  The PCRA court, which was
> also the original trial court, noted:

> > [T]he juror had failed to abide by the Court's instructions
> > regarding note taking.  Accordingly, we felt her removal
> > was proper and given that she failed to abide by that

-26-

instruction, we would have been concerned that she
would have not abided by our future instructions.  Had
trial counsel objected to her removal, that objection **would
have been overruled.**

(PCRA Court Opinion, dated April 18, 2005, at 2) (emphasis supplied).

In any event, at the relevant time, jurors were prohibited from
taking notes; thus there would have been no basis for counsel to
object.  Counsel cannot be found ineffective for failing to raise meritless
claims. *May, supra* at _____, 898 A.2d at 564. [FN8] Because
Appellant's underlying claim lacks merit, we determine that trial
counsel was not ineffective for having failed to object to the removal
of the juror or to seek her rehabilitation.

(Doc. 19, 12-1-06 Memorandum of Superior Court, pp. 8-9) (footnote omitted).

We agree with Petitioner that he raised his second habeas claim in his PCRA Petition and

that he exhausted this claim in state court since the Superior Court considered it on its merits when

it affirmed the denial of his PCRA Petition in its December 1, 2006 decision.  (Doc. 2, 39).

However, we find no merit to Petitioner's second habeas claim insofar as it raises  a claim

of ineffective assistance of counsel.  We review this claim, to the stated extent, using the AEDPA's

deferential standard of review.  Based on the foregoing, we find that Petitioner has not shown that

his trial counsel's performance for not objecting to the removal of the juror was deficient since at

the relevant time of Petitioner's trial, jurors were not allowed to take notes.  The Pennsylvania Rule

of Criminal Procedure relevant to this issue is Rule 644, which prior to June 30, 2005 (*i.e.*, the

relevant time of this case, September 2001), stated "[t]he jurors shall not be permitted to take notes

during the course of the trial."  Pa.R.Crim.P. 644.   (Doc. 19, 12-1-06 Memorandum of Superior

Court, p. 8).

-27-

In Petitioner's criminal trial, the jury was clearly instructed by the trial court before the testimony began that note- taking, not just note-taking in the courtroom, was not permitted in criminal cases, and this rule was based on Rule 644 of the Pennsylvania Rules of Criminal Procedure. Therefore, the dismissal of the juror by the trial court, based on her "direct violation of the [trial] judge's prior instruction," was warranted and in accord with the applicable state rules of criminal procedure and state law at the time of trial. (*Id.*, p. 9). Trial counsel was not ineffective for failing to object to the removal of the juror since there was simply no basis, under Rule 644 and the trial court's instruction, to raise an objection. Thus, any objection by trial counsel would have been meritless.

Nor does the record show that the trial court's removal of the juror due to her direct violation of its prior instruction was erroneous for being too extreme, as Petitioner argues. (Doc. 2, p. 41). The Superior Court indicated that since the trial court became aware of the juror's direct violation of its instruction before the jury was charged and well before it deliberated and returned a verdict, the trial court's removal of the juror was not too prejudicial. (Doc. 19, 12-1-06 Memorandum of Superior Court, pp. 8-9).

Therefore, there was absolutely no basis for trial counsel to object since the removed juror was in direct violation of the trial court's prior instruction not to take notes during the criminal case, and counsel cannot be found ineffective for failing to raise a meritless objection, and this claim should likewise be denied. The Third Circuit has held that "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d. Cir. 1999); *citing Newsted v. Gibson*, 158 F.3d

1085, 1090 (10 the Cir.1998) (§ 2254 claim); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir.

1994); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989) (citation omitted).

   3.  *Petitioner's pro se Claim, Jury Instructions Regarding Penalties*[9]

   In his Amended Memorandum, Petitioner claims that he "was denied the  ineffective (sic)

assistance of counsel" when his PCRA counsel failed to raise the claim that his trial counsel was

ineffective for not objecting to the trial court's instructions  about the applicable penalties for first

and third degree murder.  (Doc. 9, p. 2).[10]

   The claim of ineffective assistance of PCRA counsel for failure to raise the claim that trial

counsel was ineffective for failure to object to the trial court's instructions given to the jury about

penalties prior to deliberations is not subject to review by this Court since the claim was not

specified as a Grounds for Relief in Petitioner's counseled Habeas Petition, but rather, was raised,

for the first time in this case, in the Petitioner's *pro se* "Amended Memorandum of Law." (Doc. 9).

Petitioner's counsel of record, who filed the Habeas Petition on Petitioner's behalf and who filed

Petitioner's support Memorandum and Traverse, did not sign the Amended Memorandum filed by

Petitioner.  (Doc. 9).  Nor did Petitioner's counsel include the stated ineffective assistance of PCRA

counsel in the Habeas Petition.  (Doc. 1, pp. 6-7).

---

   [9]As stated above, this claim is not raised in the counseled Habeas Petition. Rather,
Petitioner improperly raised this claim on his own in his Amended Memorandum, Doc. 9.

   [10]Petitioner attached Exhibits A and B to his Amended Memorandum, which include
Petitioner's letters to his PCRA counsel objecting to his failure to raise his trial counsel's lack of
opposition to the trial court's giving the jury the penalties for murder.   (Doc. 9, Ex. B).

The Court in *Louder v. Patrick*, 2007 WL 1576399, *1 (W.D.Pa.), held in situations in which a claim was not raised in the habeas petition that:

> To the extent that Petitioner is complaining that the Report did not address all of the issues that Petitioner raised in his direct appeal to the Superior Court, the reason is simple, Petitioner did not raise all of those issues in either the original habeas petition *and* brief in support or in the amended habeas petition.

In our case, the Petitioner, through his counsel of record, did not raise the stated third *pro se* claim in his Habeas Petition, nor did he seek leave to amend his Habeas Petition to include this claim. He simply filed an Amended Memorandum on his own and not signed by his counsel, with the stated third claim. Since this *pro se* third claim must be raised in both his original Habeas Petition and Brief or be included in an amended habeas petition, this Court is under no obligation to review this claim. Further, because this this claim was not included in Petitioner's Habeas Petition, the Respondent DA was not on notice that he had to answer this claim and in fact, he did not discuss this claim in his Response. (Doc. 14).

Regardless, even if we review this claim, we find it meritless. The basic claim of the Petitioner is outlined as follows:

> Petitioner was denied the ineffective (sic) assistance of counsel in violation of the Sixth Amendment to the United States when PCRA counsel omitted Petitioner's meritorious claim that trial/direct appeal counsel failed to object to trial court error when giving instructions to the jury on the applicable penalties for first and third degree murder resulting in a waiver of the claim which was included in Petitioner's original Post Conviction Relief Act and layered on collateral review.

(Doc. 9, p. 2).

-30-

The Pennsylvania Superior Court, in its December 1, 2006 decision, ruled on the merits of this claim, and stated as follows:

> Because Appellant [Petitioner] was convicted of third-degree, not first-degree murder, any error in instructing the jury on the penalties for first-degree murder, if such error existed, could not have harmed Appellant. Appellant thus has not, nor could he have, demonstrated the requisite prejudice that would entitle him to relief under the PCRA. "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Cox*, 581 Pa. 107, 125, 863 A.2d 536, 546 (2004) (quotation and citation omitted). Accordingly, Appellant's final claim of ineffective counsel also fails.

(Doc. 19, 12-1-06 Memorandum of Superior Court, p. 15).

This decision of the Superior Court is not contrary to clearly established federal law, and it does not render a conclusion that is opposite to any relevant United States Supreme Court precedent. It is clear that of the two murder offenses Petitioner was charged with, he was convicted of the lesser offense and thus, there was no prejudice to Petitioner despite the trial court's instruction to the jury regarding the penalties for first degree murder.

Further, this Court has considered a similar issue in the case of *Reddinger v. Palakovich*, 2007 WL 4287519 (M.D.Pa.). In *Reddinger*, Petitioner claimed his appellate counsel was ineffective for having failed to raise in his appeal that trial counsel erroneously did not object to the jury being given instructions on the penalties for first and third degree murder prior to deliberation, similar to the issue which our Petitioner attempts to raise *pro se*. In the *Reddinger* case, this Court stated:

> Reddinger's final contention is that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failure to object to an improper jury charge, or to seek curative jury instructions. Reddinger claims that the jury instructions were "confusing and improperly interjected sentencing considerations into the jury's deliberative process on guilt or

-31-

innocence." (Citation omitted).  Specifically Reddinger claims that counsel was ineffective for failing to challenge the charge because the trial judge instructed the jury on the penalties for murder in the first and third degree, but did not instruct the jury on penalties for the other, lesser offenses of which he was accused. (Citation omitted).  The PCRA judge was the same judge who presided at Reddinger's trial on the merits.  Although there was no testimony at the PCRA hearing regarding trial counsel's decision not to object to the jury instructions, the judge recalled that they were the topic of discussion off the record in chambers. (Citation Omitted) ...  Reddinger's trial counsel..."was truly concerned with differentiating the penalties for first and third degree murder." (Citation Omitted).  The purpose for this request "was to differentiate between life imprisonment for first degree murder and the newly established sentencing range for third degree murder.... [I]t was his intent to make third degree murder seem more palatable to the jury by making the jury aware that the possible sentencing range was from twenty (20) to forty (40) years incarceration." (Citation Omitted)

...

[This] tactical decision by trial counsel was reasonable under the first prong of the *Strickland* test.  Moreover, Reddinger has not made a sufficient showing that the outcome of the proceedings would have been different but for the inclusion of the challenged instructions.  Because trial counsel was not ineffective to Reddinger on the issue of jury instructions, appellate counsel was not ineffective in having declined to raise the issue on appeal. *Holland v. Horn,* 150 F.Supp.2d 706, 731 (E.D.Pa.2001).

*Reddinger*, 2007 WL 4287519 *6-7.

"In assessing counsel's performance, a court must begin with the presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance'." *Lambert*, 2007 WL 2173390, *8(citation omitted).  "Even if Petitioner establishes that counsel's conduct was 'professionally unreasonable,' the Sixth Amendment is not violated unless there is a 'reasonable probability' that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*.( citation omitted).  In presuming that Petitioner's PCRA and trial counsel's conduct fell within the wide range of reasonable professional assistance, it is possible that trial

counsel felt it was advantageous for the jury to hear the different sentencing ranges for both first

degree murder and third degree murder to make the lesser of the two charges seem more palatable

to the jury.  If this trial tactic was intended, it was certainly effective, since Petitioner did, in fact,

receive the lesser of the two murder charges.  The Pennsylvania Superior Court stated in its

December 1, 2006 decision that for an ineffective counsel claim to succeed, the Petitioner must

satisfy a three-prong test:

> 1) the underlying claim is of arguable merit; (2) counsel had no reasonable
> strategic basis for his or her action or inaction; and (3) but for the errors and
> omissions of counsel, there is a reasonable probability that the outcome of
> the proceedings would have been different. *Commonwealth v. May*, ____ Pa.
> ____, ____, 898 A.2d 559, 564 (2006), *cert. denied*, ____ U.S. ____
> (November 6, 2006).  Failure to satisfy any one prong of this test will cause
> the entire claim to fail.  *Commonwealth v. Bath*, 907 A.2d 619, 622 (Pa.Super. 2006).  Fu

(Doc. 19, 12-1-06 Memorandum of Superior Court, p. 5).

Since we have determined that trial counsel had a reasonable strategic basis for his decision

not to object to the trial court's instruction to the jury on the penalties for first and third degree

murder, we find that Petitioner has failed to satisfy the second prong of the above test.  As stated,

trial counsel is presumed to have had a strategic motive with respect to his challenged conduct, *i.e.*,

trying to avoid a first degree murder conviction of Petitioner and a life imprisonment sentence for

Petitioner.  Indeed, Petitioner avoided both a first degree murder conviction and a life sentence.

We also find that by not making any showing and merely concluding that there was no strategic

motive for trial counsel's decision, the presumption of effectiveness has not been rebutted by

Petitioner.  We also find that Petitioner has not shown that his trial counsel's performance for failing

to object to the trial court's instruction was deficient and that the deficient performance prejudiced

his defense of the murder charges.  Thus, PCRA counsel was not ineffective for failing to raise the

stated issue in Petitioner's PCRA Petition.  For these reasons, we find that the Petitioner's third *pro*

*se* claim has no merit and will recommend that habeas relief be denied with respect to this claim.

Accordingly, we will recommend that the Petitioner's request for habeas relief on all of his

claims be denied.

## V. RECOMMENDATION.

Based on the foregoing, we find  no merit to the Petitioner's exhausted  ineffective assistance

of counsel claims contained in his Habeas Corpus Petition.  (Doc. 1).  We also find no merit to

Petitioner's *pro se* habeas claim contained in his Amended Memorandum. (Doc. 9).  Therefore, we

respectfully recommend that the Petitioner's Habeas Corpus Petition be **DENIED**.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 29, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIE GOODING,                    :        CIVIL ACTION NO. **1:CV-07-1243**
                                   :
              Petitioner           :        (Judge Kane)
                                   :
        v.                         :        (Magistrate Judge Blewitt)
                                   :
JAMES WYNDER, et al.,              :
                                   :
              Respondents          :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 29, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                                             **s/ Thomas M.  Blewitt**

                                           **THOMAS M. BLEWITT**
                                           **United States Magistrate Judge**


**Dated: August 29, 2008**

-36-